```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JAVIER RIVERA, <br><br> Plaintiff, <br> v. <br><br> CAMDEN COUNTY JAIL, <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 16-cv-8733(JBS-AMD) <br><br> **OPINION** |

APPEARANCES:

Javier Rivera, Plaintiff Pro Se
1027 Florence Avenue, Apt. 21-M
Vineland, NJ 08360

**SIMANDLE, District Judge:**

I. **INTRODUCTION**

    1.   Plaintiff Javier Rivera seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against Camden County Jail ("CCJ") for allegedly unconstitutional conditions of confinement. Complaint, Docket Entry 1.

    2.   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

II. **BACKGROUND**

    3.   The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only.

The Court has made no findings as to the truth or merits of Plaintiff's allegations.

4. Plaintiff alleges that he "slept on the floor without sheets or pillows, not even a mattress." Complaint § III(C). He also complains of being "constantly ask[ed] to have [a] rectal exam or check[], and then was not allow[ed] to put my clo[thes] back on." *Id*.

5. Plaintiff alleges that these events occurred from "June through July 2015 and August through September 2016." *Id.* § III(A).

6. Plaintiff states he has damages of "a lot of inflammation, burning, and itching on my rectum" from the alleged events. *Id*. § IV.

7. Regarding requested relief, Plaintiff asks the Court "to do some investigations and see for themselves the poor conditions that inmates are suffering at Camden County Jail," and he also seeks $10,000. *Id*. § V.

### III. STANDARD OF REVIEW

8. Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis*. The Court must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is

subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

9. To survive *sua sponte* screening,[1] the Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). While *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**IV. DISCUSSION**

    **A.**    **Claims Against CCJ: Dismissed With Prejudice**

10. Plaintiff brings this action pursuant to 42 U.S.C. § 1983[2] for alleged violations of Plaintiff's constitutional

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017) (citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)).

[2] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

rights. To state a claim for relief under § 1983, a plaintiff must allege: (a) the violation of a right secured by the Constitution or laws of the United States; and (b) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

11. CCJ is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983"); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983).

12. Given that named defendant CCJ is not a "person" for § 1983 purposes, the Complaint's claims against CCJ must be dismissed with prejudice.

    **B.** **Overcrowded Conditions Of Confinement Claim: Dismissed Without Prejudice**

13. The Complaint states: "Since I got in [to CCJ], I slept on the floor without sheets or pillows, not even a

---

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

mattress . . . I had to sleep on the floor." Complaint § III(C) (referred to as Plaintiff's "Overcrowding Claim").

14. Construing the Complaint to assert a claim for overcrowding at CCJ that led to Plaintiff "sleep[ing] on the floor" (*id.*) during incarceration, Plaintiff does not allege sufficient facts to support a reasonable inference that a constitutional violation from overcrowding has occurred in order to survive this Court's review under § 1915.

15. The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse

5

conditions become excessive in relation to the purposes assigned to them") (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) (quoting *Bell*, 441 U.S. at 542)). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

16. Here, the Complaint does not meet the pleading requirements to state a plausible cause of action for unconstitutional overcrowding, and the Overcrowding Claim is dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

17. Plaintiff may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine privations and hardship over an extended period of time, and that were excessive in relation to their purposes. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days after the date this Opinion and Order are entered on the docket.[3]

---

[3] The amended complaint shall be subject to screening prior to service.

18. Plaintiff is further advised that any amended complaint must plead specific facts regarding the overcrowded conditions of confinement. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

19. Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

### C. <u>Search & Clothes Claim: Dismissed Without Prejudice</u>

20. Plaintiff contends: "I was constantly ask[ed] to have rectal exam or check[], and then I was not allow[ed] to put my clo[thes] back on. I had to sleep on the floor with cold because

7

I was completely naked." Complaint § III(C) (referred to as Plaintiff's "Search & Clothes Claim").

21. This contention in the Complaint does not sufficiently allege an improper strip search or other constitutional violation.

22. Under the Fourth Amendment, inmates have a limited right of bodily privacy "subject to reasonable intrusions necessitated by the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. A prisoner search policy is constitutional if it strikes a reasonable balance between the inmate's privacy and the needs of the institution. *Parkell*, 833 F.3d at 326 (citing *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 339 (2012)).

23. "In making this balancing determination, the Court must take into account the unique character of prison. Detention in a correctional facility 'carries with it the circumscription or loss of many significant rights.'" *Jordan v. Giles*, No. 08-cv-6088, 2014 WL 2009080, at *2 (D.N.J. May 16, 2014) (citing

*Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (restrictions are "necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security")). "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell*, 441 U.S. at 559. "New Jersey jails, like most correctional facilities, face serious problems . . . [P]reventing the introduction of weapons and drugs into the prison environment is a legitimate interest of concern for prison administrators . . . Prevention of the entry of illegal weapons and drugs is vital to the protection of inmates and prison personnel alike." *Florence v. Bd. of Freeholders of Cnty. of Burlington*, 621 F.3d 296, 307 (3d Cir. 2010) (internal citations and quotations omitted). "Therefore, the protections of the Fourth Amendment are, to some extent, less robust in prison. [T]he need for the search is more pronounced in the prison context." *Jordan*, 2014 WL 2009080 at *2.

24. Thus, courts have recognized that prison officials deserve "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. So, there are circumstances in which the balance tips toward allowing strip

searches on less than probable cause. *See Bell*, 441 U.S. at 560 (visual body-cavity inspections can be conducted after prisoner-visitor contact visits "on less than probable cause"); *Florence*, 621 F.3d at 308 (holding blanket strip search procedures do not violate the Fourth Amendment where officials conduct such searches of all incoming inmates in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility), *cert. granted*, 563 U.S. 917 (2011), *aff'd* 566 U.S. 318 (2012). For example, courts may defer to prison officials when they perform searches after contact visits because courts are "ill-equipped to deal with" the security dangers in prisons that might stem from contact with the outside world. *Bell*, 441 U.S. at 531.

 25. In this case, however, even construing the Complaint's facts in the light most favorable to Plaintiff, the Search & Clothes Claim's non-specific allegation is insufficient to state a cause of action.

 26. The Complaint sets forth no facts regarding the circumstances of the purported body-cavity examinations. For example, the Complaint does not describe the searches' location where they were performed, manner, circumstances, timing (such as whether or not subsequent to a contact visit), or the particular persons who conducted them. Similarly, the Complaint does not indicate the time duration or dates on which Plaintiff

allegedly slept without clothes on the floor. The Complaint's fact omissions in these respects leave the Court unable to determine whether or not these incidents occurred in pursuit of a legitimate correctional interest on the part of CCJ, such as maintenance of order, reduction of risks posed by incarceration of Plaintiff in particular, or response to a general population emergency situation at CCJ. In other words, the Complaint does not offer facts suggesting that CCJ did body-cavity exams or had Plaintiff sleep without clothes to maliciously or sadistically cause him harm.

27. Therefore, the Search & Clothes Claim is dismissed without prejudice. The Court shall grant Plaintiff leave to amend the Complaint to satisfy the requisite pleading requirements for this claim. If Plaintiff elects to do so, he may file an amended complaint within 30 days of the date this Opinion and Order are entered on the docket. As noted above, the Court reminds Plaintiff that any amended complaint must plead specific facts regarding the search and clothes incidents. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

28. With respect to Plaintiff's requested relief that seeks for this Court "to do some investigations and see for

themselves the poor conditions that inmates are suffering at Camden County Jail" (Complaint § V), the Court advises Plaintiff that he was one of thousands of members of a certified class in the case on this Court's docket entitled, *Dittimus-Bey v. Camden County Correctional Facility*, Civil No. 05-cv-0063 (JBS), which was a class action case. The class plaintiffs were all persons confined at the Camden County Correctional Facility ("CCCF"), as either pretrial detainees or convicted prisoners, at any time from January 6, 2005 until June 30, 2017. The class of plaintiffs sought injunctive and declaratory relief about unconstitutional conditions of confinement at the CCCF involving overcrowding. That class action did not involve money damages for individuals. A proposed final settlement of that case, which describes the settlement in detail, was preliminarily approved on February 22, 2017. Various measures undertaken in several Consent Decrees under court approval reduced the jail population to fewer prisoners than the intended design capacity for the jail. This greatly reduced or eliminated triple and quadruple bunking in two-person cells, as explained in the Sixth and Amended Final Consent Decree, which continues those requirements under court supervision. According to the Notice to all class members that was approved in the *Dittimus-Bey* case on February 22, 2017, any class member could object to the proposed settlement by filing an objection in the *Dittimus-Bey* case

before April 24, 2017. A court hearing occurred on May 23, 2017, at which objections were to be considered. This Court finally approved the *Dittimus-Bey* settlement on June 30, 2017, and that settlement bars Plaintiff and other class members from seeking injunctive or declaratory relief for the period of time from January 6, 2005 through June 30, 2017, but the settlement did not bar any individual class member from seeking money damages in an individual case. In other words, the Final Consent Decree in *Dittimus-Bey* did not adjudicate or deal with any individual money damage claims. Indeed, claims for money damages were not sought in *Dittimus-Bey* and inmates were free to pursue individual claims for monetary relief under 42 U.S.C. § 1983 by filing an individual complaint.

29. Plaintiff, a class member in *Dittimus-Bey*, is bound by that case's final judgment in which class members are deemed to release claims for injunctive and declaratory relief against Camden County and its officers and employees through the final judgment date of June 30, 2017. This means that Plaintiff, like all class members, can no longer obtain injunctive relief beyond that authorized in the Consent Decree for jail conditions during the class period. But that litigation did not involve individual inmates' or detainees' claims or class claims for money damages, which must be sought and proved on an individual claim basis.

**V.   CONCLUSION**

For the reasons stated above: (1) the Complaint's claims against CCJ are dismissed with prejudice; and (2) the remainder of all claims in the Complaint are dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

An appropriate order follows.

**April 30, 2018**                                  **s/ Jerome B. Simandle**
Date                                                   JEROME B. SIMANDLE
                                                         U.S. District Judge